People of State of Illinois ex rel. Louis B. Allen, Jr., Appellee, v. Martin H. Kennelly, Mayor of Chicago et al., Appellants.

Gen. No. 45,035.

Heard in the second division of this court for the first district at the February term, 1950. Opinion filed October 10, 1950. Released for publication November 2, 1950.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, of Chicago, for appellants; L. LOUIS KARTON, Head of Appeals and Review Division and HARRY H. POLLACK, Assistant Corporation Counsel, of counsel.

DAVID JETZINGER and G. J. DEVANNA, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

In the superior court, petitioner sought and obtained a writ of mandamus to compel the City of Chicago and its officials to pay a judgment in the sum of $2,233, plus interest at the rate of five per cent per annum, from which respondents appeal.

There is substantially no dispute as to the essential facts. On March 2, 1928, in a suit brought under the Local Improvement Act, entitled *City of Chicago v. Phipps et al.*, No. 457530, judgment was entered against

the city and in favor of Peter J. Angsten, Margaret, his wife, and Mary Carey, a widow, fixing the compensation in the sum of $2,233 for property owned by them and to be taken for public use, and fixing the special assessment for benefits to the property not taken and owned by them in the sum of $1,528. In pursuance of section 16 of the Local Improvement Act (Ill. Rev. Stat. 1949, ch. 24, par. 84–16 [Jones Ill. Stats. Ann. 21.2223]), the city on September 14, 1933 applied $1,528 of the judgment to pay the special assessment, and on August 31, 1935, deposited $705, the balance of the judgment, with the county treasurer. That sum is still there on deposit. Thereafter, the city entered into possession of the property that was to be taken for public use, and it became part of Woodlawn avenue, a public street in the city.

The public records in the city comptroller's office, consisting of special assessment warrant books, showed that the special assessment in the sum of $1,528, levied against the property not taken, was marked paid by judgment. The Angstens and Mary Carey retained title to the property not taken until March 11, 1948, when they conveyed by quitclaim deed to the petitioner herein both the property taken and not taken for Woodlawn avenue. The deed also assigned ''to the grantee herein our interest in and to any judgment entered for part of the aforesaid property taken for Woodlawn Avenue.'' April 13, 1949, more than 20 years after the rendition of the judgment, petitioner filed the instant proceeding.

The controversy between the parties arises out of the following provision of the Revised Cities and Villages Act, formerly section 16 of the Local Improvement Act (Ill. Rev. Stat. 1949, ch. 24, sec. 84–16 [Jones Ill. Stats. Ann. 21.2223]) : ''If the amount awarded to any person for property taken or damaged for an improvement under this article is greater than the amount assessed

against the property for that improvement, or if the benefit is greater than the damage, in either case the difference only shall be collectible of the owner or be paid to him.'' Pursuant to the foregoing provision, the city applied $1,528 of the condemnation judgment to the payment of the special assessment levied against the property not taken. At that time such procedure was commonly followed and not questioned. The balance of the judgment, $705, was thereafter deposited with the county treasurer in accordance with the prevailing practice. It was not until 1941, when the case of *Cohen v. City of Chicago,* 377 Ill. 221, was decided, that the provisions of section 16 were questioned. Petitioner bases his cause of action on the ruling in the *Cohen* case, and takes the position that under that decision the city's action in crediting $1,528 of the judgment for payment of the special assessment is void. In that case the court held that although a municipality may not *require* that a condemnation judgment be applied to the payment of a subsequent special assessment, such an arrangement between the municipality and the property owner entitled to the award is valid. Respondents take the position that when the city applied $1,528 of the judgment to the payment of the special assessment on September 14, 1933, and entered this payment in the public special assessment warrant books in the city comptroller's office, and then on August 31, 1935 deposited the balance of the judgment, amounting to $705, in the county treasurer's office for payment to the petitioner's assignors, and subsequently entered into possession of the condemned property, all without protest from the petitioner's assignors, the failure of the latter to protest was a ratification or approval of the city's action, and cannot be questioned by petitioner at this late date. There is the additional fact that after the opinion in the *Cohen* case was filed in 1941, petitioner's as-

signors took no action to challenge the city's crediting of the $1,528, thereby indicating consent to that procedure.

█ Defendants rely on the later decision in *Trust Co. of Chicago v. Village of Lincolnwood*, 385 Ill. 236, which differentiated the *Cohen* case and amplified what had been said in that decision. In the *Lincolnwood* proceeding an injunction was entered restraining defendants from attempting to collect certain special assessment warrants and from removing certain credit entries from the village records with reference thereto. Prior to the time plaintiff had acquired title to the real estate involved, the village had levied certain special assessments against the property, as shown by special assessment warrant books setting forth the legal description of the property and special assessments extended against it, as well as the credits against such assessments. All the assessments arose out of a condemnation proceeding. The village records showed that certain amounts awarded for property taken and for damages to property not taken were credited against instalments of the special assessment, which instalments were shown as "paid by award." This was the condition of the record at the time plaintiff purchased the property. After the decision in *Cohen v. City of Chicago,* which held that property owners cannot be required to accept the compensation awarded as reduced by offsetting against such awards the amount of assessments for benefit to property, the village removed the credit entries and attempted to collect the assessments, but the court held that since the entries were on the public records of the village at the time plaintiff took the property, and the books and records of the office of the village being records required by law to be kept, they could not be contradicted by parol evidence; that when the plaintiff purchased the property it was entitled to assume that the

621

application of the award was made at the election or with the consent of the owners of the property; and that plaintiff took the property free from the lien of the instalments. Significantly the court, referring to the *Cohen* case, held that "there is nothing in that case, however, which holds that a property owner may not, if he chooses, have applied to the payment of subsequent assessments any portion of such an award. The holding of the *Cohen case* is that he may not be *required* to so take it. In the present case the record indicates that these payments by award were made by arrangement of the parties, *certainly with the knowledge and consent of those who were the owners of the property at the time the entry was made and who doubtless received the benefit of such payments in the purchase price which appellee [plaintiff] or appellee's beneficiaries paid for the property.* In this the case before us is to be distinguished from the *Cohen* case. In other words, while the city or village *may not require* that awards be applied to payment of subsequent special assessments, there is nothing in the law which prohibits an arrangement of that kind if the village and property owner entitled to the award wish so to do. Such appears to have been the case here. These entries were on the public records of the village at the time the appellee took this property. The books and records of the office of the village clerk are records required by law to be kept and as such they cannot be contradicted by parol evidence. [Citing cases.] When appellee purchased this property it was entitled to assume that the application of the award was made at the election or with the consent of the owners of the property." (Italics ours.) Petitioner in his brief completely disregards the *Lincolnwood* case and the discussion thereof in respondents' brief.

On oral argument, petitioner contended that in the light of the *Cohen* case, an overt act and not mere

acquiescence is required. We find nothing in the decision which would justify so narrow a construction of the language of the court. Moreover, in the more recent *Lincolnwood* case the Supreme Court amplified the language applicable to situations of this kind to include circumstances where the owner of the property had consented to have applied to the payment of subsequent assessments any portion of such award.

Under the facts in the instant case petitioner was charged with public knowledge that $1,528 of the judgment entered in the condemnation suit was credited in the city's books for the payment of the special assessment levied against the property not taken, and that the petitioner thereby obtained the property free and clear of the lien of the special assessment. In his demand for payment of the judgment served on the city prior to the filing of this proceeding, petitioner states that the city deposited with the county treasurer $705 "as partial liquidation of said award," and gives the city credit for that sum on the amount he claims under the judgment, thus clearly indicating that he had knowledge of the city's action at the time he acquired the property and received the assignment of the judgment. Whatever rights petitioner had in the judgment entered in March 1928 in the condemnation proceeding he received by virtue of the deed from the original owners of the property. That deed is dated March 11, 1948 and purports to convey that part of the property already taken for Woodlawn avenue and to assign "to the grantee herein our interest in and to any judgment entered for part of the aforesaid property taken for Woodlawn Avenue."

██ All the facts indicate that petitioner's assignors never disavowed the city's action, thus acquiescing therein, and petitioner is bound by their conduct.

In the view we take it becomes unnecessary to discuss the contention of respondents that the Statute of

623

Limitations barred this proceeding after a lapse of more than 20 years, and that of petitioner that he is entitled to receive interest on the judgment from the date thereof until full payment is made.

For the reasons indicated the judgment of the superior court is reversed, and the cause remanded with directions that judgment be entered for defendants.

*Judgment reversed, and cause remanded with directions.*

SCHWARTZ, P. J., and SCANLAN, J., concur.